J-S07017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.M.R., A MINOR | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.R., FATHER | : | No. 3042 EDA 2019 |

Appeal from the Order Entered October 2, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000338-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: N.I.R., A MINOR | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.R., FATHER | : | No. 3043 EDA 2019 |

Appeal from the Order Entered October 2, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000339-2019

BEFORE:   NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.:                                **FILED MARCH 05, 2020**

Appellant, M.R. ("Father"), appeals from the orders entered in the Philadelphia County Court of Common Pleas, which granted the petitions of the Philadelphia Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor children, R.M.R. and N.I.R. ("Children").  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant

_____

[*] Retired Senior Judge assigned to the Superior Court.

facts and procedural history of this case. Therefore, we have no reason to restate them. Procedurally, we add that this Court consolidated Father's appeals *sua sponte* on November 18, 2019.

Father raises one issue for our review:

DID THE TRIAL COURT ABUSE ITS DISCRETION BY INVOLUNTARILY TERMINATING FATHER'S PARENTAL RIGHTS TO [CHILDREN]?

(Father's Brief at 6).

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear

and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph L. Fernandes, we conclude Father's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed November 20, 2019, at 5-16) (finding: court terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b); at time of termination hearing, Children had been in DHS care for 20 months, nearly their entire lives; Father either failed or refused to successfully complete his objectives and could not place himself in position to parent in six month period prior to filing of termination petitions; Father was

noncompliant with dual-diagnosis, drug screen, and domestic violence prevention objectives; although Father's visits with Children were appropriate, Father's attendance at visits was inconsistent; Children's needs are met by foster parents; Children are well-bonded with foster parents, and they look to foster parents for support and comfort; Children do not share parent/child bond with Father).  The record supports the court's decision; therefore, we see no reason to disturb it.  *See In re Z.P., supra*.  Accordingly, we affirm based on the trial court's opinion.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/20

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

2019 NOV 20 AM 11: 25

PRO PROTHY

| | |
|---|---|
| In the Interest of R.M.R., a Minor<br>a/k/a R.C., a Minor | CP-51-AP-0000338-2019 |
| In the Interest of N.I.R., a Minor<br>a/k/a N.C., a Minor | CP-51-AP-0000339-2019 |
| | FID:    51-FN-000106-2014 |
| APPEAL OF: M.R., Father | 3042 EDA 2019<br>3043 EDA 2019 |

**OPINION[1]**

**Fernandes, J.:**

Appellant M.R. ("Father") appeals from the order entered on October 2, 2019, granting the petitions filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Father's parental rights to R.M.R. ("Child 1") and N.I.R. ("Child 2") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Lue B. Frierson, Esquire, counsel for Father ("Father's Counsel"), filed a timely Notice of Appeal ("Notice") with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b) ("Statement") on October 29, 2019.

**Factual and Procedural Background:**

This family has been known to DHS since 2011, pursuant to a substantiated General Protective Services ("GPS") report regarding the poor hygiene and behavioral issues of Children's siblings.[2] On February 21, 2018, DHS received a GPS report alleging that Children were born at Pennsylvania Hospital ("Hospital") at 36 weeks gestation; Mother[3] tested positive for benzodiazepines during psychiatric hospitalizations in January and February of 2018; Father informed hospital staff that he was not the father of Children; Father had not visited Children at the hospital; Children were hospitalized in the Neonatal Intensive Care Unit due to their early delivery; Children would be ready for discharge on February 22, 2018; Mother and Father had a

---

[1] The trial court requested the Notes of Testimony for October 2, 2019, on October 30, 2019. The trial court received the Notes of Testimony on November 12, 2019.

[2] Children have two siblings that are not involved in this appeal.

[3] The trial court also involuntarily terminated Mother's parental rights on October 2, 2019. Mother is not involved in this appeal.

history of domestic violence; and Children's siblings were in the custody of DHS. This report was determined to be valid. On February 22, 2018, DHS visited Hospital. DHS spoke with hospital staff, who confirmed the allegations of the report. Hospital staff indicated that Father had visited Hospital and informed staff that he did not believe that he was the biological father of Children and that he wanted a paternity test conducted. The hospital staff recommended to Father that he should buy a paternity test at the drug store, as Hospital did not provide those services. Hospital staff further indicated that Children were not ready to be discharged. When DHS spoke with Mother, Mother indicated that Father was the biological father of Children. On February 23, 2018, DHS learned that Children were ready to be discharged and DHS subsequently obtained an Order of Protective Custody ("OPC"). On that same date, DHS placed Children in a foster home, where they currently remain.

On February 26, 2018, a shelter care hearing was held for Children.[4] Father was present for this hearing. The trial court lifted the OPC and ordered the temporary commitment to DHS to stand. The trial court further ordered that Father be referred for genetic testing, that DHS ensure that Children were to be transported to complete the genetic testing, and that Father be permitted to have supervised visits with Children.

On March 5, 2018, an adjudicatory hearing was held for Children. Father was not present for this hearing. Children were adjudicated dependent based on present inability to provide proper parental care and control. The trial court discharged the temporary commitment to DHS and fully committed Children to the custody of DHS. Father was referred to a domestic violence class. The trial court also ordered that Father is not to have visitation with Children until the genetic testing is complete and if Father's paternity was confirmed, he was ordered to attend weekly supervised visitation with Children.

On March 16, 2018, the DNA Diagnostics Center reported that Father is not excluded as the biological father of Children, and that based on the testing results obtained from analyses of Father and Children's DNA, the probably of paternity is 99.999995%.

---

[4] The trial judge assigned to the shelter care hearing was The Honorable Jonathan Q. Irvine. Between March 5, 2018, and June 4, 2018, the trial judge assigned to this matter was The Honorable Lyris Younge. From August 27, 2018 to the present, this matter is assigned to the Honorable Joseph Fernandes.

On June 4, 2018, a permanency review hearing was held for Children. Father did not attend this hearing. The trial court found that Children's placement continued to be necessary and appropriate, and ordered their commitment to DHS to stand. The trial court ordered Father to follow up with Menergy for domestic violence and referred Father to the CEU for a drug screen and dual diagnosis assessment. Father was ordered to appear at the next listing. On June 5, 2018, July 13, 2018, August 10, 2018, and August 24, 2018, Father failed to attend his scheduled visit with Children.

On August 27, 2018, a permanency review hearing was held for Children. Father was present for this hearing. The trial court found that Children's placement continued to be necessary and appropriate, and ordered that Children remain as placed. The trial court determined that Father was minimally compliant with the permanency plan. Father was re-referred to the CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, monitoring, and three random drug screens. Father was ordered to complete domestic violence counseling and parenting courses, and was re-referred to the Achieving Reunification Center ("ARC") and Menergy for those appropriate services. At Father's forthwith drug and alcohol screen, Father tested positive for marijuana. Father scheduled a drug and alcohol assessment with the CEU for September 18, 2018. Father was a no call/no show for his scheduled appointment. On October 5, 2018, Father failed to attend his scheduled visit with Children. On November 19, 2018, Father tested negative for all substances at the CEU.

On January 7, 2019[5], a permanency review hearing was held for Children. Father was not present for this hearing. The trial court found that Children's placement continued to be necessary and appropriate, and ordered that Children remain as placed. The trial court determined that Father was minimally compliant with the permanency plan. The trial court referred Father to the CEU for a dual diagnosis assessment and three random drug screens, if he availed himself. On March 15, 2019, and March 29, 2019, Father failed to attend his scheduled visit with Children.

On February 26, 2019, Community Umbrella Agency ("CUA") revised the Single Case Plan ("SCP"). Father did not participate in the SCP meeting. Children's current goal was "return to parent," with their alternate/concurrent goal of adoption. Father's parental objectives were to

---

[5] A permanency review hearing was originally scheduled for November 26, 2018. The Juvenile Court Hearing Officer granted a continuance by request of the Child Advocate for the matter to be heard by the trial judge.

comply with court orders; comply with the CEU dual diagnosis assessment and follow the CEU's recommendations; complete three random drug screens; attend court-ordered visitation; participate in domestic violence counseling; and participate in parenting education classes.

On April 3, 2019, a permanency review hearing was held for Children. Father did not attend this hearing. The trial court determined that Father was minimally compliant with the permanency plan. The trial court found that Children's placement continued to be necessary and appropriate, and ordered that Children remain as placed. It was determined that Father attended only one visit with Children since December 2018. Father was referred for employment assistance, parenting education, domestic violence counseling, and all appropriate services. Father was also referred to the CEU for a full drug and alcohol screen, dual diagnosis assessment, monitoring, and three random drug screens, when he avails himself. Father was ordered to remain in contact with CUA.

Children have been in DHS care since February 23, 2018, since they were two-days-old. Father has failed to consistently engage with his objectives throughout the life of the case and Father has failed to demonstrate that he can safely and appropriately care for Children on consistent basis. DHS filed petitions to involuntarily terminate Father's parental rights on May 2, 2019.

On June 26, 2019, a termination and goal change hearing was scheduled for Children. Father was present for this hearing. The trial court granted a continuance to obtain a contested termination and goal change time slot. It was determined that Father completed a parenting program through Catholic Community Services on May 29, 2019. The trial court referred Father to the CEU for a forthwith drug screen, dual diagnosis assessment, and three random drug screens. Father was ordered to continue attending supervised visits with Children at the agency and Father must provide confirmation 24 hours in advance. Father was also referred to Menergy for domestic violence. CUA was ordered to complete a home assessment and clearances on Father's home. Father's forthwith drug and alcohol screen was positive for marijuana. On August 6, 2019, Father tested positive for marijuana and phencyclidince ("PCP") at the CEU. On September 17, 2019, Father tested positive for marijuana and alcohol at the NET.

On October 2, 2019, the trial court held the termination trial for Children. Father was present for this trial. After all testimony was given, the trial court found clear and convincing evidence to

involuntarily terminate Father's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8), and (b). On October 29, 2019, Father's Counsel filed this appeal on behalf of Father.

**Discussion:**

On appeal[6], Father complains of the following:

1. The trial court abused its discretion by involuntarily terminating Father's parental rights pursuant to Children

2. Father's Counsel respectfully requests the right to supplement this Statement of Matters Complained of on Appeal pending receipt of the Notes of Testimony.

Father's Counsel only filed a Notice for the October 2, 2019 trial court order that terminated Father's parental rights. Father's Counsel did not file a Notice for the October 2, 2019 trial court order changing Child's permanency goal from reunification to adoption. Additionally, an issue is waived where it is not specifically presented in the Appellant's Pa.R.A.P. 1925(b) statement. *In re C.P.*, 901 A.2d 516, 522 (Pa. Super. 2006); *See In re J.E.D.*, 879 A.2d 288, 293, fn. 7 (Pa. Super. 2005). Father did not appeal the change of the permanency goal from reunification to adoption in his Statement, so he has waived that issue on appeal. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa. Super. 2006). Although the termination trial for Children on October 2, 2019, addressed matters regarding Children's goal change, this Opinion will only address the termination of Father's parental rights to Children. Father's Counsel did not submit a supplement to the Statement, so this Opinion will only address the matters listed on the Statement filed with the Notice on October 29, 2019. For the purpose of this opinion, Father's issues 1 through 2 will be consolidated to read: Did the trial court err or abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8), and (b)?

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

**(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately

---

[6] Father's Counsel filed two Notices and Statements for Children, one for each Child, but all Statements list the same errors.

preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy Section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). A child needs love, protection, guidance, and support. Both physical and emotional needs cannot be met by a merely passive interest in the development of the child. The parental obligation is a positive duty, which requires affirmative performance. It requires continuing interest in the child and a genuine effort to maintain communication and association with the child. At the same time, the trial court shall not consider any efforts by the parent to remedy the conditions which brought the child into care which are first initiated subsequent to the giving notice of the filing of the termination petition. *Id*. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue.

The petitions for involuntary termination were filed for Children on May 2, 2019. (N.T. 10/02/19, pg. 7). Father's SCP objectives were dual diagnosis, random drug screens, domestic violence, parenting, and visitation with Children. (N.T. 10/02/19, pgs. 20-21, 26). Father is aware of his objectives. (N.T. 10/02/19, pg. 24; See DHS Exhibit 5). For the six months prior to the filing of the petitions, Father did not complete his dual diagnosis objective. Father did not complete his dual diagnosis assessment at the CEU until more than two months after the petitions were filed. Father did not complete the intake for an intensive outpatient program ("IOP") until more three months after the petitions were filed. (N.T. 10/02/19, pgs. 22, 24; See DHS Exhibit 4). On April 3, 2019, Father tested positive for marijuana at a forthwith drug screen. (DHS Exhibit 3). Father has failed to consistently attend the random drug screens, although he was contacted regularly by CUA. (N.T. 10/02/19, pg. 24). Prior to the filing of the petitions, Father was non-compliant with his dual

diagnosis and random drug screen objectives. (N.T. 10/02/19, pg. 37). Father did not complete his domestic violence objective. Father did not complete the intake at Menergy for domestic violence until after the petitions were filed. (N.T. 10/02/19, pgs. 25-26). Prior to the filing of the petitions, Father was non-compliant with his domestic violence objective. (N.T. 10/02/19, pg. 36). Father did not complete a parenting class until after the petitions were filed. (N.T. 10/02/19, pg. 26). On April 3, 2019, the trial court modified Father's supervised weekly visits to bi-weekly visits. Father's visits with Children were modified due to Father's inconsistent attendance. Between December 2018 and March 2019, Father only visited Children once. (N.T. 10/02/19, pg. 27; See DHS Exhibit 5). Father's visits never graduated beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28). Although Father's visits with Children have been appropriate, CUA was never able to consistently monitor the visits due to Father's inconsistent attendance, so CUA was unable to increase the visitation beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28, 51, 54). Prior to the filing of the petitions, Father was non-compliant with visits. (N.T. 10/02/19, pg. 37). For the six months prior to the filing of the petitions, Father refused to perform his parental duties by failing to successfully engage with his objectives and Father has not taken positive steps to put himself in a position to be reunified with Children. Father has the affirmative duty to place himself in a position to parent Children. Father either failed or refused to successfully complete his objectives and place himself in a position to parent in the six months prior to the filing of the petitions. As a result, the trial court did not err or abuse its discretion by finding clear and convincing evidence that Father, by his conduct, had refused and failed to perform parental duties and has evidenced a settled purpose to relinquish his parental claim to Children, so termination under 23 Pa.C.S.A. §2511(a)(1) was proper.

The trial court also terminated Father's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect, or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. _Adoption of C.A.W._, 683 A.2d 911, 914 (Pa. Super. 1996). §2511(a)(2) focuses on the child's

present and future need for essential parental care, control, or subsistence necessary for their physical or mental well-being. *In re Adoption of M.J.H.*, 501 A.2d 648, 654 (Pa. Super. 1985). Even if a parent demonstrates love for their child, if a parent's incapacity cannot be remedied, their parental rights may be terminated. *Id.*

Since June 4, 2018, Father's SCP objectives were dual diagnosis, random drug screens, domestic violence, parenting, and visitation with Children. (N.T. 10/02/19, pgs. 20-21, 26; See DHS Exhibit 5). Since Father availed himself, these objectives remained substantially the same throughout the life of the case. Father is aware of his objectives. (N.T. 10/02/19, pg. 24; See DHS Exhibit 5). Father has not completed his dual diagnosis objective. Father did not complete his dual diagnosis assessment until August 6, 2019. The trial court first ordered Father to complete a dual diagnosis assessment at the permanency review hearing on June 4, 2018. In July 2019, Father was a no call/no show for two scheduled appointments for an assessment at the CEU. (N.T. 10/02/19, pg. 22; See DHS Exhibit 4-5). Father did not complete the intake for an IOP until September 13, 2019, less than a month before the termination trial. (N.T. 10/02/19, pgs. 22, 24; See DHS Exhibit 4). Since enrolling in the IOP, Father has missed four group sessions. (N.T. 10/02/19, pg. 22). Father has repeatedly tested positive for drugs and alcohol. On April 3, 2019, Father tested positive for marijuana at a forthwith drug screen at the CEU. (DHS Exhibit 3). On June 29, 2019, Father tested positive for marijuana at a forthwith drug screen at the CEU. On August 6, 2019, Father tested positive for marijuana and PCP at the CEU. (N.T. 10/02/19, pg. 22; DHS Exhibit 4). On September 17, 2019, Father tested positive for alcohol and marijuana at the drug screen that he provided at his IOP. (N.T. 10/02/19, pgs. 22-23; DHS Exhibit 4). Father has failed to consistently attend the random drug screens, although he was contacted regularly by CUA. (N.T. 10/02/19, pg. 24). Prior to the last permanency review hearing on June 26, 2019, Father was non-compliant with his dual diagnosis and random drug screen objectives. (N.T. 10/02/19, pg. 37). Father has not completed his domestic violence objective. Father did not complete the intake at Menergy for domestic violence until after the permanency review hearing on June 26, 2019. (N.T. 10/02/19, pgs. 25-26). Father was first referred to Menergy for domestic violence at the adjudicatory hearing on March 5, 2018. (DHS Exhibit 5). Prior to the permanency review hearing on June 26, 2019, Father was non-compliant with his domestic violence objective. (N.T. 10/02/19, pg. 36). Father did not complete a parenting class until May 29, 2019. (N.T. 10/02/19, pg. 26). Father was first referred

for parenting on August 27, 2018. (DHS Exhibit 5). On April 3, 2019, the trial court modified Father's supervised weekly visits to bi-weekly visits. Father's visits with Children were modified due to Father's inconsistent attendance. Between December 2018 and March 2019, Father only visited Children once. Father's visits with Children did not become more consistent until after the permanency review hearing on June 26, 2019. (N.T. 10/02/19, pg. 27; See DHS Exhibit 5). Father claimed that he was missing visits because CUA was ignoring his request to reschedule the visits with Children. (N.T. 10/02/19, pg. 63). Father's visits never graduated beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28). Although Father's visits with Children have been appropriate, CUA was never able to consistently monitor the visits due to Father's inconsistent attendance, so CUA was unable to increase the visitation beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28, 51, 54). Prior to the permanency review hearing on June 26, 2019, Father was non-compliant with visits. (N.T. 10/02/19, pg. 37). Children need permanency, which Father cannot provide. The conditions and causes of Father's incapacity cannot or will not be remedied by Father. Children have been adjudicated dependent since March 5, 2018, and Children have been in DHS care since February 23, 2018, twenty months, and nearly their entire lives, at the time of the termination trial on October 2, 2019. (N.T. 10/02/19, pgs. 10-11). Father has attended some of the court hearings in this matter and is aware of his SCP objectives. Father had ample opportunity to put himself in a position to parent, but Father failed to do so. Father's repeated and continued incapacity has not been mitigated. The DHS witnesses were credible. Father has demonstrated that he is unwilling to remedy the causes of his incapacity to parent in order to provide Children with essential parental care, control, or subsistence necessary for their physical and mental well-being. Termination under 23 Pa.C.S.A. §2511(a)(2) was also proper.

Father also appeals the trial court's termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on

hold in hope that the parent will summon the ability to handle the responsibilities of parenting. _In re J.T._, 817 A.2d 505 (Pa. Super. 2003). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. _In re N.W._, 859 A.2d 501 (Pa. Super. 2004).

Children have been in DHS care since February 23, 2018, twenty months, and nearly their entire lives, at time of the termination trial on October 2, 2019. (N.T. 10/02/19, pgs. 10-11). Father's SCP objectives were dual diagnosis, random drug screens, domestic violence, parenting, and visitation with Children. (N.T. 10/02/19, pgs. 20-21, 26; See DHS Exhibit 5). Since Father availed himself, these objectives remained substantially the same throughout the life of the case. Father is aware of his objectives. (N.T. 10/02/19, pg. 24; See DHS Exhibit 5). Father has not completed his dual diagnosis objective. Father did not complete his dual diagnosis assessment until August 6, 2019. The trial court first referred Father for a dual diagnosis assessment at the permanency review hearing on June 4, 2018. In July 2019, Father was a no call/no show for two scheduled appointments for an assessment at the CEU. (N.T. 10/02/19, pg. 22; See DHS Exhibit 4-5). Father did not complete the intake for an IOP until September 13, 2019, less than a month before the termination trial. (N.T. 10/02/19, pgs. 22, 24; See DHS Exhibit 4). Since enrolling in the IOP, Father has missed four group sessions. (N.T. 10/02/19, pg. 22). Father has repeatedly tested positive for drugs and alcohol. On April 3, 2019, Father tested positive for marijuana at a forthwith drug screen at the CEU. (DHS Exhibit 3). On June 29, 2019, Father tested positive for marijuana at a forthwith drug screen at the CEU. On August 6, 2019, Father tested positive for marijuana and PCP at the CEU. (N.T. 10/02/19, pg. 22; DHS Exhibit 4). On September 17, 2019, Father tested positive for alcohol and marijuana at the drug screen that he provided at his IOP. (N.T. 10/02/19, pgs. 22-23; DHS Exhibit 4). Father has failed to consistently attend the random drug screens, although he was contacted regularly by CUA. (N.T. 10/02/19, pg. 24). Prior to the last permanency review hearing on June 26, 2019, Father was non-compliant with his dual diagnosis and random drug screen objectives. (N.T. 10/02/19, pg. 37). Father has not completed his domestic violence objective. Father did not complete the intake at Menergy for domestic violence until after the

permanency review hearing on June 26, 2019. (N.T. 10/02/19, pgs. 25-26). Father was first referred to Menergy for domestic violence at the adjudicatory hearing on March 5, 2018. (DHS Exhibit 5). Prior to the permanency review hearing on June 26, 2019, Father was non-compliant with his domestic violence objective. (N.T. 10/02/19, pg. 36). Father did not complete a parenting class until May 29, 2019. (N.T. 10/02/19, pg. 26). Father was first referred for parenting on August 27, 2018. (DHS Exhibit 5). On April 3, 2019, the trial court modified Father's supervised weekly visits to bi-weekly visits. Father's visits with Children were modified due to Father's inconsistent attendance. Between December 2018 and March 2019, Father only visited Children once. Father's visits with Children did not become more consistent until after the permanency review hearing on June 26, 2019. (N.T. 10/02/19, pg. 27; See DHS Exhibit 5). Father claimed that he was missing visits because CUA was ignoring his request to reschedule the visits with Children. (N.T. 10/02/19, pg. 63). Father's visits never graduated beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28). Although Father's visits with Children have been appropriate, CUA was never able to consistently monitor the visits due to Father's inconsistent attendance, so CUA was unable to increase the visitation beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28, 51, 54). Prior to the permanency review hearing on June 26, 2019, Father was non-compliant with visits. (N.T. 10/02/19, pg. 37). Children are currently placed together in a pre-adoptive foster home, where they have remained for the life of the case. (N.T. 10/02/19, pgs. 28, 38). Children are well-bonded with the foster parents and appear as part of the family. Children are able to closely relate to the foster mother. (N.T. 10/02/19, pg. 38). Children's every day needs are met by the foster parents and they look to the foster parents for support and comfort. The foster parents attend all medical appointments for Children. Father has never attended a medical appointment for Children. (N.T. 10/02/19, pgs. 39, 49). Children refer to the foster mother as "Mom-Mom." Children have shown continuous growth in the current foster placement. (N.T. 10/02/19, pg. 40). As a result, the trial court found that termination of Father's parental rights was in the best interest of Children for their physical, intellectual, moral, and spiritual well-being. Father is unable to remedy the conditions which led to Children's placement. Termination best serves Children's needs and welfare. Because the trial court made these determinations on the basis of clear and convincing evidence, termination under 23 Pa.C.S.A. §2511(a)(5) was also proper.

The trial court also terminated Father's parental rights under 23 Pa.C.S.A. §2511(a)(8), which

permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. *In re: Adoption of K.J.*, 936 A.2d 1128, 1133 (Pa. Super. 2007). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love, comfort, security, and stability. *In re Bowman*, 647 A2d 217 (Pa. Super. 1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003).

Children have been in DHS care since February 23, 2018, twenty months, and nearly their entire lives, at time of the termination trial on October 2, 2019. (N.T. 10/02/19, pgs. 10-11). Father's SCP objectives were dual diagnosis, random drug screens, domestic violence, parenting, and visitation with Children. (N.T. 10/02/19, pgs. 20-21, 26; See DHS Exhibit 5). Since Father availed himself, these objectives remained substantially the same throughout the life of the case. Father is aware of his objectives. (N.T. 10/02/19, pg. 24; See DHS Exhibit 5). Father has not completed his dual diagnosis objective. Father did not complete his dual diagnosis assessment until August 6, 2019. The trial court first referred Father for a dual diagnosis assessment at the permanency review hearing on June 4, 2018. In July 2019, Father was a no call/no show for two scheduled appointments for an assessment at the CEU. (N.T. 10/02/19, pg. 22; See DHS Exhibit 4-5). Father did not complete the intake for an IOP until September 13, 2019, less than a month before the termination trial. (N.T. 10/02/19, pgs. 22, 24; See DHS Exhibit 4). Since enrolling in the IOP, Father has missed four group sessions. (N.T. 10/02/19, pg. 22). Father has repeatedly tested positive for drugs and alcohol. On April 3, 2019, Father tested positive for marijuana at a forthwith drug screen at the CEU. (DHS Exhibit 3). On June 29, 2019, Father tested positive for marijuana at a forthwith drug screen at the CEU. On August 6, 2019, Father tested positive for marijuana and PCP at the CEU. (N.T. 10/02/19, pg. 22; DHS Exhibit 4). On September 17, 2019, Father tested positive for alcohol and marijuana at the drug screen that he provided at his IOP. (N.T. 10/02/19,

pgs. 22-23; DHS Exhibit 4). Father has failed to consistently attend the random drug screens, although he was contacted regularly by CUA. (N.T. 10/02/19, pg. 24). Prior to the last permanency review hearing on June 26, 2019, Father was non-compliant with his dual diagnosis and random drug screen objectives. (N.T. 10/02/19, pg. 37). Father has not completed his domestic violence objective. Father did not complete the intake at Menergy for domestic violence until after the permanency review hearing on June 26, 2019. (N.T. 10/02/19, pgs. 25-26). Father was first referred to Menergy for domestic violence at the adjudicatory hearing on March 5, 2018. (DHS Exhibit 5). Prior to the permanency review hearing on June 26, 2019, Father was non-compliant with his domestic violence objective. (N.T. 10/02/19, pg. 36). Father did not complete a parenting class until May 29, 2019. (N.T. 10/02/19, pg. 26). Father was first referred for parenting on August 27, 2018. (DHS Exhibit 5). On April 3, 2019, the trial court modified Father's supervised weekly visits to bi-weekly visits. Father's visits with Children were modified due to Father's inconsistent attendance. Between December 2018 and March 2019, Father only visited Children once. Father's visits with Children did not become more consistent until after the permanency review hearing on June 26, 2019. (N.T. 10/02/19, pg. 27; See DHS Exhibit 5). Father claimed that he was missing visits because CUA was ignoring his request to reschedule the visits with Children. (N.T. 10/02/19, pg. 63). Father's visits never graduated beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28). Although Father's visits with Children have been appropriate, CUA was never able to consistently monitor the visits due to Father's inconsistent attendance, so CUA was unable to increase the visitation beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28, 51, 54). Prior to the permanency review hearing on June 26, 2019, Father was non-compliant with visits. (N.T. 10/02/19, pg. 37). Children are currently placed together in a pre-adoptive foster home, where they have remained for the life of the case. (N.T. 10/02/19, pgs. 28, 38). Children are well-bonded with the foster parents and appear as part of the family. Children are able to closely relate to the foster mother. (N.T. 10/02/19, pg. 38). Children's every day needs are met by the foster parents and they look to the foster parents for support and comfort. The foster parents attend all medical appointments for Children. Father has never attended a medical appointment for Children. (N.T. 10/02/19, pgs. 39, 49). Children refer to the foster mother as "Mom-Mom." Children have shown continuous growth in the current foster placement. (N.T. 10/02/19, pg. 40). As a result, the trial court found that termination of Father's parental rights was in the best interest of Children for their physical, intellectual, moral, and spiritual well-being. Father is unable to remedy the conditions

that led to Children's placement. The conditions which led to the removal of Children continue to exist and termination of Father's parental rights would best serve the needs and welfare of Children. The testimony of DHS witnesses were credible. Since the record contains clear and convincing evidence, the trial court did not abuse its discretion and termination under 23 Pa.C.S.A. §2511(a)(8) was also proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). The trial court must determine that the bond between a parent and a child cannot be in only one direction. There must be a bilateral relationship that roots from a parent's willingness to learn appropriate parenting skills and be able to provide stability to the child. *In re K.K.R.-S.*, 958 A.2d 529, 534 (Pa. Super. 2008). Additionally, a bond is not just a positive relationship between a child and a parent. Being a parent means assuming responsibility so that a real bond develops, not just a casual relationship. Children have the ability to know, love, and sometimes have an enjoyable time with a parent that have little to do with their upbringing. *In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *Id.* However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, or medical care, if found to be beyond the control of the parent. The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition. Beyond the presence of a bond between a parent and child, the trial court can equally emphasize the safety and needs of the child, and should consider the intangible, such as the love, comfort, security, and stability that the child might have with their foster parent. *In re Adoption of C.D.R.*, 111A.3d 1212, 1219 (Pa. Super. 2015).

On April 3, 2019, the trial court modified Father's supervised weekly visits to bi-weekly visits.

Father's visits with Children were modified due to Father's inconsistent attendance. Between December 2018 and March 2019, Father only visited Children once. Father's visits with Children did not become more consistent until after the permanency review hearing on June 26, 2019. (N.T. 10/02/19, pg. 27; See DHS Exhibit 5). Father claimed that he was missing visits because CUA was ignoring his request to reschedule the visits with Children. (N.T. 10/02/19, pg. 63). Father's visits never graduated beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28). Although Father's visits with Children have been appropriate, CUA was never able to consistently monitor the visits due to Father's inconsistent attendance, so CUA was unable to increase the visitation beyond supervised at the agency. (N.T. 10/02/19, pgs. 27-28, 51, 54). Prior to the permanency review hearing on June 26, 2019, Father was non-compliant with visits. (N.T. 10/02/19, pg. 37). Children would not suffer any irreparable harm if Father's visits with Children stop. (N.T. 10/02/19, pg. 53). Children are currently placed together in a pre-adoptive foster home, where they have remained for the life of the case. (N.T. 10/02/19, pgs. 28, 38). Children are well-bonded with the foster parents and appear as part of the family. Children are able to closely relate to the foster mother. (N.T. 10/02/19, pg. 38). Children's every day needs are met by the foster parents and they look to the foster parents for support and comfort. The foster parents attend all medical appointments for Children. Father has never attended a medical appointment for Children. (N.T. 10/02/19, pgs. 39, 49). Children refer to the foster mother as "Mom-Mom." Children have shown continuous growth in the current foster placement. (N.T. 10/02/19, pg. 40). Children and the foster parents share a parent/child bond. (N.T. 10/02/19, pgs. 38-39, 49). Children do not share a parent/child bond with Father. (N.T. 10/02/19, pgs. 49, 52). Children do not view Father as a parental figure in their lives. (N.T. 10/02/19, pgs. 52-53). When Father was asked about the bond he shares with Children, Father admitted that he is not "100% bonded" with them. (N.T. 10/02/19, pg. 61). Children would not suffer any irreparable harm if Father's parental rights were terminated. (N.T. 10/02/19, pgs. 28; 39-40, 53). At the time of the termination trial, Children were under two years old. Due to Children's young age, Children are not competent enough to provide their wishes regarding adoption or reunification. Due to Children's inability to verbalize their wishes, there was no conflict in the Child Advocate representing Children's legal interest and best interest at the termination trial. (N.T. 10/02/19, pg. 8). The DHS witnesses were credible. There was no error of law or abuse of discretion by the trial court and, therefore, the trial court's termination of Father's parental rights to Children under 23 Pa.C.S.A. §2511(b) was proper.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b), since it would best serve Children's emotional needs and welfare. The trial court's termination of Father's parental rights was proper and should be affirmed.

By the court,

_____
Joseph Fernandes J.

**IN THE COURT OF COMMON PLEAS**
**FOR THE COUNTY OF PHILADELPHIA**
**FAMILY COURT DIVISION**

| | | |
|---|---|---|
| In the Interest of R.M.R., A minor | : | CP-51-AP-0000338-2019 |
| | : | |
| In the Interest of N.I.R., A minor | : | CP-51-AP-0000339-2019 |
| | : | |
| | : | FID: 51-FN-000106-2014 |
| | : | |
| APPEAL OF: M.R., Father | : | 3042 EDA 2019 |
| | : | 3043 EDA 2019 |

## CERTIFICATE OF SERVICE

I hereby certify that this court is serving a copy of this duly executed Opinion upon all parties or their counsel on <u>November 20, 2019</u>. The names and addresses of all persons served are as follows:

Amy Skiles, Esq.
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102
Attorney for D.H.S.

Elizabeth Flanagan, Esq.
Defender Association of Philadelphia
1441 Sansom Street, 9th Floor
Philadelphia, Pennsylvania 19102
Child Advocate

Lue B. Frierson, Esq.
2333 St. Albans Place
Philadelphia, Pennsylvania 19146
Attorney for Father

Jeffrey C. Bruch, Esq.
1515 Market Street, Suite 1200
Philadelphia, Pennsylvania 19102
Attorney for Mother

BY: _____

Ariel J. Bruce
Law Clerk to the Hon. Joseph L. Fernandes
First Judicial District of Pennsylvania
Family Division
1501 Arch St., Room 1431
Philadelphia, Pa. 19102
T: (215) 686-2660 | F: (215) 686-4224